IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHRISTOPHER G. LEE, | No. 4:22-CV-00232 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| RACHEL THOMPSON, | |
| Respondent. | |

MEMORANDUM OPINION

JUNE 1, 2022

Petitioner Christopher G. Lee ("Lee"), a federal inmate in the custody of the Federal Bureau of Prisons ("BOP"), filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 17, 2022, alleging that his due process rights were violated in the context of prison disciplinary proceedings held at the Allenwood Low Security Federal Correctional Institution, White Deer, Pennsylvania.[1]

The petition is ripe for disposition and, for the reasons that follow, will be denied.

I.   BACKGROUND

On September 13, 2020, Lee received Incident Report 3432644 charging him with Prohibited Act Code 299-Disruptive Conduct-High, most like 297-Disrupting

---

[1]   Doc. 1.

Monitoring. The reporting officer described the incident as follows:

> On September 13, 2020 at approximately 1040 HRS, I became aware of a TruLincs message from chrislee@outsidehelper.vip to inmate Lee, Christopher Reg. No. 72338-067. The email was received on 9-12-2020 at approximately 6:52 PM and contained the following Your payment for $40.00 has been processed and applied to your Corbot account. Thank you for choosing Open Efforts for your Personal Assistant service. Inmate Lee is using this email address to circumvent monitoring procedures and violate Bureau of Prisons Policy. Records show for that email address inmate Lee has Lee documented for the contacts last name, and Chris documented for the contacts first name for that email address. The email address is actually associated with an Open Efforts Corbot Account for a Personal Assistant. These Corbot Accounts allow inmates to use the internet (Google and Twitter) and have a text forwarding service in which inmate Lee has paid for access. The texting violation prohibits monitoring staff from knowing the true identity of the contact information and the frequency of which Lee corresponds with anyone on his contact list. Additionally, inmates are not authorized to have access to the Internet. According to the Trust Fund Policy 4500.12 Page 119 Section 14.1 inmates will not have access to the internet. In the Open Efforts account Services, it clearly states that inmates can do google searches and get the top ten results and retrieve an all text version of any website. The falsification of the contact information, the use of a text forwarding service, and the use of the internet jeopardizes the safety, security, orderly operation of the correctional facility, inhibits the ability of staff to protect the public, and violations Bureau of Prisons Policy.[2]

Upon delivery of the incident report, the investigator advised him of his rights and referred the matter to the Unit Discipline Committee ("UDC") for further action.[3]

During his UDC hearing, which took place the following day, Petitioner stated that he "was unaware that use of this service violated BOP Policy, only used it to contact people on his contact list, did not access the internet and did not falsify any

---

[2] Doc. 6-1, p. 18.
[3] Id.

account information on his contact list," and "to the best of his knowledge his account could still be fully monitored."[4]  The UDC referred the matter to a disciplinary hearing officer ("DHO") stating that the act warranted sanctions not available to the UDC.[5]  On September 14, 2020, Petitioner was provided with a copy of Inmate Rights at Discipline Hearing and a Notice of Discipline Hearing Before the DHO.[6]

The disciplinary hearing convened on October 8, 2020.[7]  The DHO verbally advised Lee of his rights, noted that he received advanced written notice of the charge on September 13, 2020, recorded that he waived his right to witnesses and a staff representative, and documented that Lee indicated that he understood his rights.[8]  Lee denied the charges.[9]

In finding that Lee committed the prohibited act as charged, the DHO relied on Lee's admitted involvement in the incident, the Incident Report, TRU System Documentation, BOP-IRTRU and Corbot Assistant Pricing/Description Services.[10] After the consideration of evidence, the DHO concluded that "the greater weight of evidence" supports the finding that "Lee, Christopher 72338-067 committed the prohibited act of Mail Abuse Code 296 on at or about 09-12-2020 at approx. 1852

---

[4] *Id.* at 19.
[5] *Id.*
[6] *Id.* at 23, 24.
[7] *Id.* at 10.
[8] *Id.*
[9] *Id.*
[10] *Id.* at 11.

hrs. at LSCI Allenwood, PA."[11]  The DHO sanctioned Lee with three months loss of email privilege, thirty day loss of commissary privilege, and disallowance of twenty-seven days of good conduct time.[12]  His reasons for the sanctions were as follows:

> Lee's misuse of his written correspondence privileges by using a 3rd party service to send emails and receive internet search information detracted from the intent of the Federal Bureau of Prisons policy on the same.  His behavior in this case circumvented the monitoring of his community contacts allowed internet usage.  Accordingly, DIS GCT 27 DAYS is sanctioned in this case to punish Lee for his behavior.  Further LP EMAIL 3 MONTHS and LP COMM 30 DAYS will hopefully deter him from this behavior in the future.[13]

Lee was then advised of his appeal rights.[14]

Presently, Lee is seeking expungement of Incident Report 3432644 and reinstatement of twenty-seven days of good conduct time.[15]

## II.   DISCUSSION

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law."[16]  Federal inmates possess a liberty interest in good conduct time because it directly impacts the duration of confinement [17]  Therefore, Lee's claim, that his due process rights were violated in the context of the

---

[11]  *Id*. at 12.
[12]  *Id.*
[13]  *Id*.
[14]  *Id.* at 13.
[15]  Doc. 1, p. 8.
[16]  U.S. CONST. amend. V.
[17]  *See Wolff v. McDonnell*, 418 U.S. 539, 555-57 (1974); *Young v. Kann*, 926 F.2d 1396, 1399 (3d Cir. 1991).

disciplinary hearing process and that these violations resulted in a loss of good conduct time, is properly the subject of this habeas petition.[18]

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The process is initiated with filing an incident report and conducting an investigation.[19] Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator.[20] The inmate is entitled to receive initial notice of the incident, which is "ordinarily" provided within twenty-four hours of staff becoming aware of the inmate's involvement, 28 C.F.R. § 541.5(a), and advance written notice of the charges at least twenty-four hours prior to commencement of the DHO hearing,"[21]

Following the investigation, the matter is referred to the UDC for an initial hearing.[22] If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions.[23] If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a

---

[18] *See Sandin v. Conner*, 515 U.S. 472 (1995).
[19] 28 C.F.R. § 541.5.
[20] 28 C.F.R. § 541.5(b).
[21] 28 C.F.R. § 541.8(c).
[22] 28 C.F.R. § 541.7.
[23] *Id.*

5

hearing.[24] Offenses classified in the 200-level High Severity category carry a possible sanction of, *inter alia*, loss of good conduct time credits.[25] In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than twenty-four hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing.[26]

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to submit names of requested witnesses and have them called to testify and to present documents.[27] The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available," and need not call repetitive or adverse witnesses.[28] The inmate has the right to be present throughout the hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion."[29] The DHO must "consider all evidence presented during the hearing."[30] The decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."[31] After the hearing, the DHO will either: (1) find the inmate committed the prohibited act or similar one

---

[24] *Id.*
[25] 28 C.F.R. § 541.3.
[26] *Id.* at § 541.8 (c) and (d).
[27] *Id.* at § 541.8(f).
[28] *Id.* at § 541.8(f)(2) and (3).
[29] *Id.* at § 541.8(e).
[30] *Id.* at § 541.8(f).
[31] *Id.*

described in the incident report; (2) find the inmate did not commit the prohibited act charged; or (3) refer the incident report back for further investigation, review and disposition.[32] If an inmate is found to have committed a prohibited act, the DHO can impose any of the available sanctions listed in Table 1 and 2 of § 541.3.[33] The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, the findings and decisions, the specific evidence relied on, and the reasons for the sanctions imposed.[34] A copy must be delivered to the inmate.[35]

The BOP's disciplinary procedures are in accord with due process requirements. Specifically, when a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: 1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; 2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; 3) assistance in presenting a defense if the inmate is illiterate; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action.[36]

---

[32] *Id.* at § 541.8 (a).
[33] *Id.* at § 541.8(g).
[34] *Id.* at § 541.8(h).
[35] *Id.* at § 541.8(f)(2).
[36] See *Wolff*, 418 U.S. at 564.

Importantly, the decision of the DHO will be upheld if there is "some evidence" to support the decision.[37] The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[38] Judicial review of a prison disciplinary decision is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support.[39]

Lee received adequate and timely written notice before both the UDC and DHO proceedings. He was notified of his right to remain silent before both proceedings. He was also afforded the opportunity to call witnesses and present documentary evidence. His hearing was held before an impartial DHO, and he was provided with a written copy of the DHO's decision, which recited the evidence relied upon and the rationale behind the disciplinary sanctions.

Lee asserts that "[t]he BOP abused its discretion in taking 27 days good conduct time (GCT) from Petitioner Lee, failing to meet the 'some evidence' standard."[40] In arriving at a finding of guilt, the DHO specifically relied on the

---

[37] *Superintendent v. Hill*, 472 U.S. 445, 455 (1985); *see also Young*, 926 at 1402-03 (applying *Hill* standard to federal prisoner due process challenge to prison disciplinary proceedings).
[38] *Id.* at 455.
[39] *Id.* at 457.
[40] Doc. 2, p. 5.

eyewitness account of the staff member who authored the incident report, Lee's admission that he subscribed to third-party outside texting service rather than the BOP's provided email system, and the Corbot Assistant Pricing/Description of Services. Therefore, it is clear that the finding of guilt for the Prohibited Act Code 296 offense, Mail Abuse, has some evidentiary support in the record before the DHO.

Lee also claims that the DHO "violated Petitioner Lee's Due Process Rights by changing charged conduct from Code 299 (most like 297) to a Code 296 'Mail Abuse' charge midway through the DHO proceedings without notice or explanation."[41] "[P]ursuant to 28 C.F.R. § 541.8(a)(1), a DHO has the authority to find that an inmate 'committed the prohibited act(s) charged, and/or a similar prohibited act(s) as described in the incident report.' "[42] In the instant case, Incident Report 3432644 set forth facts regarding how Petitioner attempted to circumvent the BOP's TruLincs service by subscribing to a third-party email/text/internet service. The DHO considered these facts, and therefore, "acted within his authority to conclude that [Petitioner] committed a similar ... offense t[o] the offense with which he was charged[,] and [Petitioner] received adequate notice of the proceedings against him."[43] Additionally, the similar code violation was within the 200-level

---

[41] Doc. 2, p. 6.
[42] *Guerrero v. Recktenwald*, 542 F. App'x 161, 164 (3d Cir. 2013).
[43] *Guerrero*, 542 F. App'x at 164.

High Severity category as the original code violation. Thus, Petitioner received all the procedural due process procedures to which he was entitled.

Finally, sanctions permitted upon a finding of guilt of a "High Severity Level Prohibited Acts" offense, which includes Prohibited Act Code 296, Mail Abuse, include, *inter alia*, forfeiture and/or withholding of earned statutory good conduct time up to 50% or up to sixty days, whichever is less; disallowance of between 25% and 50% (14-27) of good conduct time credit available for a year; up to 6 months of disciplinary segregation; loss of privileges and monetary fine.[44] The sanctions imposed on Lee, specifically, the loss of twenty-seven days of good conduct time, and loss of privileges, were within the limits prescribed in this regulation.

In sum, Lee is not entitled to relief.

### III. CONCLUSION

Based on the foregoing, the petition for writ of habeas corpus will be denied. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[44] 28 C.F.R. § 541.3.